UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————
№ 06-CV-5194 (JFB) (ETB)
———————————

Linda Sharp,

Plaintiff,

versus

The State of New York; The Governor of the State of New York, George E. Pataki; Attorney General of the State of New York, Elliot L. Spitzer; Mayor of the City of New York, Michael R. Bloomberg; Chief Administrative Judge of the New York State Unified Court System, Jonathan Lippman; The Comptroller of the City of New York, William Thompson, Jr.; Commissioner of Finance of the City of New York, Martha E. Stark; Commissioner of Housing Preservation and Development of the City of New York of the State of New York, Shaun Donovan; District Attorney, County of Kings, State of New York, Charles J. Hynes; District Attorney, County of Nassau, State of New York, Kathleen Rice; District Attorney, County of Suffolk, State of New York, Thomas J. Spota III; Clerk of the County of Suffolk of the State of New York, Judith A. Pascale; County Executive of the County of the State of New York, Steve Levy; and Chief Judge of the State of New York, Judith S. Kaye,

Defendants.

———————————
MEMORANDUM AND ORDER
August 28, 2007
———————————

Joseph F. Bianco, District Judge:

*Pro se* plaintiff Linda Sharp filed the complaint in this action against former Governor of the State of New York, George E. Pataki ("former Governor Pataki"), former Attorney General of the State of New York, Elliot L. Spitzer ("former Attorney General

Spitzer"), Chief Judge of the State of New York, Judith S. Kaye ("Chief Judge Kaye"), and Chief Administrative Judge New York State Unified Court System, Jonathon Lippman ("Chief Judge Lippman") (hereinafter, collectively referred to as the "State Defendants"); New York City Mayor, Michael R. Bloomberg ("Mayor Bloomberg"), New York City Comptroller, William Thompson, Jr. ("Comptroller Thompson"), New York City Commissioner of Finance, Martha E. Stark ("Finance Commissioner Stark"), New York City Commissioner of Housing Preservation and Development, Shaun Donovan ("Commissioner Donovan"), and Kings County District Attorney Charles Hynes ("District Attorney Hynes") (hereinafter, collectively referred to as the "New York City Defendants"); Suffolk County District Attorney, Thomas J. Spota III ("District Attorney Spota"), Suffolk County Clerk, Judith A. Pascale ("Pascale"), Suffolk County Executive Steve Levy ("Levy") and Nassau County District Attorney Kathleen Rice ("District Attorney Rice") (hereinafter, collectively referred to as the "County Defendants").[1]

Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12. For the reasons that follow, the defendants' motions are granted.

---

[1] Although District Attorney Rice filed a separate motion to dismiss, the Court refers to District Attorney Rice as part of the collective County Defendants.

I. BACKGROUND

A. Procedural History

1. Plaintiff's Prior Actions

Plaintiff is not a stranger to this court, and because plaintiff's prior actions are embedded in plaintiff's complaint in this action, the Court gives a brief history of some of these prior actions.

On January 4, 2003, plaintiff removed a matrimonial action to this court that had been brought against her by her then-husband, Michael Sharp ("Mr. Sharp"), in 1999. *Michael Sharp v. Linda Sharp*, No. 03-CV-407 (ADS). The case was assigned to the Honorable Arthur D. Spatt. In February 2003, Judge Spatt found that the removal was untimely and that the court lacked federal question jurisdiction, and remanded the action back to state court. (*See* Docket Entry # 12 in 03-CV-407.)

Shortly after Judge Spatt remanded the matrimonial action, on February 23, 2003, plaintiff filed an action in this court on behalf of herself and Sharp Realty, LLC,[2] against the state court judge who was presiding over the matrimonial action, Mr. Sharp, Mr. Sharp's attorney, and the receiver appointed by the state court in the matrimonial action. *Sharp v. Bivona, et al.*, No. 03-CV-895 (ADS). By Memorandum and Order dated January 26, 2004, all claims were dismissed against the judge who was presiding over the matrimonial action. *Sharp v. Bivona*, 304 F. Supp. 2d 357, 364 (E.D.N.Y. 2004). By Memorandum and Order dated December 28, 2004, all claims

---

[2] Sharp Realty, LLC, was subsequently dismissed as a party plaintiff to the action.

were dismissed against the receiver. (Docket Entry # 57 in 03-CV-895.) All claims against Mr. Sharp were dismissed by stipulation of dismissal in February 2005. (Docket Entry # 64 in 03-CV-895.) Finally, all claims against Mr. Sharp's attorney, the only remaining defendant in the action, were dismissed in an order dated October 1, 2005. (Docket Entry # 74 in 03-CV-895.)

On the same day that plaintiff filed *Sharp v. Bivona* in federal court, plaintiff filed a voluntary bankruptcy petition under Chapter 13 in the United States Bankruptcy Court for the Eastern District of New York. *In re Linda Sharp*, No. 03-81078. According to a January 7, 2004 order, the bankruptcy case was dismissed due to plaintiff's default under the terms of the bankruptcy plan. (Docket Entry # 29 in 03-81078.)

In August 2005, though she was not a party to the action, plaintiff removed an action that Mr. Sharp's attorneys had brought against him in state court in 2003. *Newman & Cahn, LLP v. Sharp*, No. 05-CV-4158 (ADS). By Memorandum and Order dated September 16, 2005, Judge Spatt remanded the action back to state court because plaintiff was not a party to the action and thus had no authority to seek removal, and because the court lacked subject matter jurisdiction. *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 117-18 (E.D.N.Y. 2005). On September 27, 2007, plaintiff again removed the same action by Mr. Sharp's attorneys to federal court. *Newmand & Cahn, LLP v. Sharp*, No. 06-CV-5213 (JFB). The case was assigned to the undersigned. By order dated October 16, 2006, this Court again remanded the action to state court. (Docket Entry # 10 in 06-CV-5213.)

On September 27, 2006, plaintiff also removed another state action in which she was not a named party. *See Glassman v. Sharp Realty, LLC*, No. 06-CV-5214 (JFB). That action was also remanded by this Court by order dated October 16, 2006. (Docket Entry # 8 in 06-CV-5214.)

2. The Instant Action

Plaintiff filed the complaint in the instant action on July 17, 2006, in the United States District Court for the District of Columbia. By Order dated August 15, 2006, the District of Columbia transferred the action to this Court pursuant to 28 U.S.C. § 1406. The case was filed in this Court on September 20, 2006 as related to *Sharp v. Bivona*, No. 03-CV-0895, and was assigned to the undersigned. Thereafter, defendants requested pre-motion conferences regarding proposed motions to dismiss the complaint. The Court waived the pre-motion conference requirement and set a briefing schedule on defendants motions. *Pro se* plaintiff moved for the appointment of counsel, and that motion was denied on October 19, 2006, without prejudice to plaintiff renewing the application at a later stage in the proceedings.

On November 3, 2006, District Attorney Rice moved to dismiss the complaint pursuant to Rule 12(b)(6) on the grounds of prosecutorial immunity. On November 8, 2006, the State Defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) based on Eleventh Amendment immunity and the *Rooker-Feldman* doctrine, and for failure to state a claim pursuant to Rule 12(b)(6). On November 13, 2006, the County defendants moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. The New York City Defendants also moved to dismiss on November 13, 2006, pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff failed to

3

file opposition papers to defendants' motions in accord with the Court's briefing schedule; nor did plaintiff request an extension of time to file her papers. Accordingly, by Order dated December 20, 2006, the Court instructed plaintiff to inform the Court in writing whether she intended to proceed with the action. In response, plaintiff filed a letter dated December 27, 2006. Plaintiff described events that had "profoundly impacted [her] ability to respond," including a freeze on her bank account by a private attorney, Kenneth J. Glassman ("Glassman"), and a death in her family. (Pl.'s Dec. 27, 2006 Ltr.) Plaintiff stated that the refusal of this Court to require Glassman to release the freeze had "caused further enormous financial and emotional hardship because the account freeze was done in such a phoney [sic] way as to illegally cripple [plaintiff] and prevent [plaintiff] from essentially functioning." (*Id.*) Plaintiff also discussed "traumatic" events that had occurred in a state action, *Newman & Cahn, LLP v. Michael Sharp*. (*Id.*) Plaintiff did not respond to the merits of defendants' motions; rather, plaintiff stated that (1) "[a] pro bono attorney would have and still can be a great help to me in moving this case forward and/or otherwise helping me handle this case," (2) her "opponents are looking for a way out before the discovery exposes the truth within this case" and (3) that she wanted discovery. (*Id.*)

The Court issued an Order on April 19, 2007, denying plaintiff's renewed request for counsel and granting plaintiff additional time to file a response to defendants' motions, to the extent such additional time was sought in plaintiff's December 13, 2007 letter. The Court received a letter in response from plaintiff dated May 16, 2007. In that letter, plaintiff complained about this Court's denial of her request for appointment of counsel.[3] (*See* Pl.'s May 16, 2007 Ltr.) Plaintiff also alleged "a concerted effort via New York State, New York City and Suffolk County's respective governments to shut down Plaintiff *pro se*."[4] (*Id.*) Plaintiff again declined to address the merits of defendants' motions.

---

[3] Specifically, plaintiff stated:

> In December 2006 . . . Plaintiff *pro se* . . . asked your Honor for appointment of counsel concerning helping same Plaintiff *pro se* with this case. On April 19, 2007, after four consecutive months of legal limbo and waiting, Plaintiff *pro se* received an "order" or written "squeeze play" (apparently from your Honor's chambers) directing Plaintiff *pro se* to do all the legal et al. work themselves [sic]. Plaintiff *pro se* waited four months to be told Plaintiff *pro se* must deliver all professionally-completed and-prepared material and supporting documentation in one month. If that's not a metaphorical "squeeze play" Plaintiff *pro se* doesn't know what is.

(Pl.'s May 16, 2007 Ltr.) Plaintiff also insisted:

> Your Honor's "order" seems to want to avoid any discussion or resolution concerning the obstructionist, corrupt behavior within his case and instead implies to metaphorically 'drown the victim' (i.e., the Plaintiff *pro se*) quickly and quietly. Please show Plaintiff *pro se*, via subsequent favorable actions and decisions, they [sic] are am totally wrong about this assumption.

(*Id.*)

[4] Plaintiff addressed a near identical version of the letter to Chief Judge Raymond Dearie dated May 16, 2007, for "archival" and "education" purposes. (*See* Pl.'s May 16, 2007 Ltr. to Judge Dearie.)

4

Accordingly, defendants did not file replies on the motions and requested that the Court deem the motions fully submitted.[5]

B. Facts Alleged in the Complaint

The following facts are taken from the complaint and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff's complaint appears to allege a vast conspiracy against her arising out of her prior litigations, and, in particular, her matrimonial action. She brings her claims pursuant to 18 U.S.C. § 1961 and 42 U.S.C. § 1981-1985.[6] According to the complaint, "the Court, under the authority of [Judge] Jonathan Lippman . . ., refused to enforce their own orders[,]" six judges "recused themselves without any explanation[,] . . . refused to acknowledge evidence without any reason[,]" and the court "contradicted its own orders." (Compl. ¶¶ 21-22.) Plaintiff also alleges that "[w]hen said politically connected crony told my husband to kill me, two judges, under the authority of Judge Lippman, encouraged the act." (*Id*. ¶ 23.) Plaintiff alleges that, under the authority of Judge Lippman, plaintiff's husband was prevented from withdrawing his divorce action. (*Id*.) Plaintiff further alleges that defendants "have ambushed [her] family" and that "New York State has deliberately disregarded facts and evidence without cause." (*Id*. ¶ 24.) In addition, plaintiff asserts that "New York State devalued [her] property to further sink [her] boat" and "threatens to further, [sic] utilize fiduciaries under the illusory color of law to devalue, destroy, and steal [her] property." (*Id*. ¶ 25.)

She also alleges that New York State Supreme Court Justice John C. Bivona, who is not a defendant in the instant action, engaged in judicial misconduct and malfeasance while presiding over her matrimonial case. (*Id*. ¶ 25.) Plaintiff further alleges that "information meant the IRS is being withheld and concealed under the authority of Judge Lippman." (*Id*. ¶ 30.) In addition, plaintiff asserts allegations regarding the involvement of her property in an alleged "pyramid scheme in Brooklyn" and complains of the Brooklyn District Attorney's Office's failure to provide plaintiff with more information. (*Id*. ¶ 31.)

Plaintiff summarizes her claims by stating that damages are sought in the amount of $60,000,000.00 for "RICO, Fraud, . . . Collusion, Conspiracy, . . . Theft by Deception, Violations of Law, Violations of Plaintiff's Due Process Rights, . . . Emotional Distress and Mental anguish, designed to Harass and Maliciously injure Plaintiff." (Compl. ¶ 36.) Plaintiff also seeks injunctive and declaratory relief. (*Id*. ¶ 37.)

---

[5] While this motion was pending, plaintiff wrote another letter to the Court stating:

> Your Honor, whenever I call your chambers concerning the status of my case before you, please have the decency and courtesy to *directly* communicate such information to me via your Chief of Staff . . . without redirecting me to the *Pro Se* clerk (which, by the way, is more than insulting to me and disgusting and tiring, to say the least).

(Pl.'s Ltr. filed July 5, 2007.)

[6] Though plaintiff's complaint lists 28 U.S.C. §§ 1981-1985, the Court notes that there is no 28 U.S.C. § 1984.

5

## II. Discussion

A motion to dismiss for want of subject-matter jurisdiction pursuant to Rule 12(b)(1) is governed by the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See Coveal v. Consumer Home Mortgage, Inc.*, No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *6 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). In reviewing such motions, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (May 21, 2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Moreover, as the plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

### A. State Defendants

The State Defendants move for dismissal of all claims under the Eleventh Amendment and, in the alternative, under the *Rooker-Feldman* doctrine, because plaintiff's claims against these defendants challenge state court decisions regarding plaintiff's matrimonial action and other lawsuits. As set forth below, the Court agrees that dismissal is warranted on both grounds.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has . . . been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns." *State Emples. Bargaining Agent Coalition v. Rowland*, No. – F.3d –, No. 06-CV-0616, 2007 WL 1976148, at *18 (2d Cir. July 10, 2007) (quoting *Western Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 20 (2d Cir. 2004)). Absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *FMC v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002). Plaintiff has asserted no claims under which it could be found that the State has waived sovereign immunity. Accordingly, this Court lacks jurisdiction to hear plaintiff's claims against the State of New York and such claims are dismissed with prejudice.

Official capacity suits are just another way

of pleading a cause of action against the entity of which the officer is an agent. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Consequently, in interpreting § 1983 to take into account state sovereign immunity provided by the Eleventh Amendment, the Supreme Court has plainly held that neither states nor its officers (when sued in their official capacities) are "persons" that are subject to suit under the statute. *See Hafer*, 502 U.S. at 26; *see also Will*, 491 U.S. at 71; *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Plaintiff's complaint is devoid of any personal allegations against State Defendants former Governor Pataki, former Attorney General Spitzer and Chief Judge Kaye. Based on the lack of individual allegations, it is apparent that plaintiff attempts to sue these individuals as representatives of the state, rather than in their individual capacity. Accordingly, the claims against the individual state defendants in their official capacities are dismissed with prejudice.[7]

In any event, even assuming *arguendo* that the Eleventh Amendment did not apply, plaintiff's claims against the State Defendants must be dismissed under the *Rooker-Feldman* doctrine because the claims are, in substance, attempts to challenge or overturn state court judgments against plaintiff. The *Rooker-*

---

[7] The complaint does make a number of references to Chief Judge Lippman. (Compl. ¶¶ 21-26, 30, 33.) Each allegation refers to acts "under the authority of" Judge Lippman. (*See id.*) The complaint, however, makes no allegations of personal involvement by Judge Lippman. To the extent plaintiff attempts to assert a claim based upon supervisory liability on the basis of *respondeat superior* or other theories of vicarious liability, those claims must also fail. In order to plead a claim of supervisory liability against individually-named defendants under § 1983, "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct is required." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003) (citing *Johnson*, 239 F.3d at 254). "'Personal involvement' is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates. *Id.* It is well-established in the Second Circuit that a plaintiff may not assert claims under Section 1983 pursuant to theories of *respondeat superior* or vicarious liability. *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989). Moreover, a defendant cannot be held personally responsible merely because he or she was in a high position of authority. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see Scaggs v. N.Y. State Dep't of Educ.*, No. 06-CV-0799 (JFB), 2007 U.S. Dist. LEXIS 35860, at *65 (E.D.N.Y. May 16, 2007) (granting motion to dismiss claims of supervisory liability where plaintiff's conclusory allegations failed to indicate personal involvement by any of the named defendants). Accordingly, in addition to the application of Eleventh Amendment immunity and the *Rooker-Feldman* doctrine, as described herein, the Court dismisses the claims against Chief Judge Lippman with prejudice on these grounds.

7

*Feldman* doctrine stands for the general proposition that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elec.s*, 422 F.3d 77, 84 (2d Cir. 2005).

In *Hoblock*, the Second Circuit rigorously re-examined the *Rooker-Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). *See Hoblock*, 422 F.3d at 83. The Second Circuit noted that *Exxon Mobile* had reduced the expanse of the *Rooker-Feldman* doctrine, "holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobile*, 544 U.S. at 284). Thus, the Second Circuit found that there are four requirements for the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (internal citations and quotations omitted).

In the instant case, the requirements for the application of *Rooker-Feldman* are met. First, plaintiff lost in state court. Second plaintiff complains of injuries caused by the state court judgment. Namely, the judgment in her matrimonial proceeding. Third, plaintiff requests review of the state-court judgment. Finally, plaintiff commenced the proceedings in the instant action after the state court judgment was rendered. This Court is not the appropriate forum for review of state proceedings. Judge Spatt explained in dismissing the claims against Justice Bivona in plaintiff's prior action of *Sharp v. Bivona*;

> There is no doubt that the plaintiff's claims for constitutional and civil rights violations and fraud arise from her matrimonial proceedings and could have been raised in state court. "The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman*." *Parra v. Greenpoint Mortg. Co.*, No. 01 CV 2010 (DGT), 2002 U.S. Dist. LEXIS 25281, at *5-*6 (E.D.N.Y. Mar. 26, 2002) (quotations omitted). Indeed, even if the orders by the state court were wrongfully procured, as the plaintiff alleges, the orders remain[] in full force and effect until they are reversed or modified by an appropriate state court. *Id.* at 6. Put simply, the plaintiff cannot enter through the back door to evade the *Rooker-Feldman* doctrine in order to get into federal court. As such, this Court lacks subject matter jurisdiction over the plaintiff's claims against Justice Bivona.

*Sharp*, 304 F. Supp. 2d at 363; *see also McLamb v. County of Suffolk*, No. 05-CV-3619 (JS), 2007 U.S. Dist. LEXIS 30622, at *6-*7 (E.D.N.Y. Mar. 5, 2007) (dismissing complaint where plaintiffs constitutional and civil rights claims arose from prior state court judgments); *Goldberg v. Roth*, No. 99-CV-11591 (BSJ), 2001 U.S. Dist. LEXIS 20932, at *15-*16 (S.D.N.Y. Dec. 17, 2001) ("[M]any of the constitutional, RICO,

conspiracy and other claims asserted by Plaintiff seemingly arise from the alleged injustices of the state court decisions. Plaintiff cannot make an end run around the *Rooker-Feldman* doctrine and into federal court, however, through the mere assertion of new and baseless claims to supplement the old.") (citation omitted). Thus, because plaintiff's claims of conspiracy, fraud and other constitutional violations attempts to challenge the substance of the judgment entered in plaintiff's matrimonial action, those claims must be dismissed.

B. New York City Defendants' Motion

The New York City defendants move to dismiss the claims against them under Rule 12(b)(6) because of the lack of any individual allegations against them. As set forth below, the Court agrees and concludes that dismissal is warranted under Rule 12(b)(6).

Plaintiff's complaint is completely devoid of allegations against the New York City defendants Mayor Bloomberg, Comptroller Thompson, Finance Commissioner Stark, or Commissioner Donovan. "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981)); *accord Makas v. Miraglia*, No. 05-CV-7180 (DAB), 2007 U.S. Dist. LEXIS 4400, at *30-*31 (S.D.N.Y. Jan. 23, 2007). Accordingly, with respect to the individual New York City defendants, in the absence of any allegations establishing the personal involvement of these defendants, plaintiff may not maintain claims against them.

The only allegation with respect to New York City defendant District Attorney Hynes is the following:

> I reported a shell company that LexisNexis crossed with my property. The Brooklyn District Attorney, under the authority of Charles J. Hynes, couldn't tell me anything, or why they couldn't tell me how my property was involved in their sting, and arrests involving a pyramid scheme in Brooklyn. The two ADA's I spoke with in rackets suggested that my property was being used as "bait". They would not say anything further. After the "sting" was broadcasted on television news, the Brooklyn District Attorney's Office, under the authority of DA Charles J. Hynes, refused to tell me anything, except that it was "big". They even refused to disclose whether or not our property continued to be in danger.

(Compl. ¶ 30.) To the extent plaintiff attempts to assert a claim of supervisory liability pursuant to 28 U.S.C. § 1983 against District Attorney Hynes based on the above allegations, that claim must also be dismissed for the reasons discussed *supra* with respsect to defendant Judge Lippman. Plaintiff's conclusory allegations regarding the action of some unnamed Assistant District Attorneys is insufficient to establish a claim of supervisory liability against District Attorney Hynes in the absence of any allegations of his personal involvement. Thus, because the complaint fails to allege specific wrongdoing on the part of each individual New York City defendant, the claims against the New York City defendants must be dismissed. However, as

9

stated *infra*, because plaintiff is proceeding *pro se*, in the interest of caution, plaintiff is granted one opportunity to amend the complaint to assert claims against the individual defendants.[8]

C. County Defendants' Motions

The County defendants also move to dismiss the claims against them on two grounds. First, with respect to Levy and Pascale, they argue that there is a lack of individual allegations. Second, defendants argue that District Attorney Spota and District Attorney Rice are entitled to prosecutorial immunity. For the reasons set forth below, the Court agrees.

The complaint alleges no factual allegations concerning Levy. With respect to Pascale, the complaint alleges:

> I wrote to the Suffolk County Clerk's Office in Riverhead via a July 28 letter and physically went to that same [sic] to find and get a copy of the aforementioned Receiver's Report to find it was not there, not even publicly listed with the County Clerk's office.

(Compl. ¶ 26.) As discussed *supra*, "[w]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Iwachiw v. N.Y. State Dept. of Motor Vehicles*, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004) (citing *Dove*, 56 F. Supp. 2d at 335). Accordingly, because the complaint fails to set forth any factual allegations of wrongdoing on the part of defendants Levy and Pascale, the complaint is dismissed as against them.

The only factual allegation that is arguably asserted as to District Attorney Spota is that, "[w]hen said politically connected crony told my husband to kill me, two judges, under the authority of Judge Lippman, encouraged the act. Nassau and Suffolk County District Attorneys looked the other way." (Compl. ¶ 23.) It appears that plaintiff's claim against District Attorney Spota is based on a failure to prosecute the actions of "said politically connected crony." *Id.* However, as District Attorney, Spota is entitled to absolute immunity regarding decisions not to prosecute. *See Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990) (finding absolute immunity for prosecutor's decision not to prosecute, and noting that "civil damages under section 1983 are inappropriate" in such cases); *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir. 1989) ("[A]s a matter of logic, absolute immunity must also protect the prosecutor from damages suits based on his decision not to prosecute."); *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 160 (S.D.N.Y. 2007) ("[C]ourts have held that the decision not to prosecute is subject to the same immunity as a decision to prosecute."); *see also Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding prosecutors absolutely immune for initiating prosecutions and presenting evidence); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding that

---

[8] It may be that the *Rooker-Feldman* doctrine also precludes suit against these defendants to the extent that they are named in order to challenge the state court judgment. However, because these defendants did not move on such grounds, and because the Court cannot determine whether the *Rooker-Feldman* doctrine is applicable to these defendants due, in part to the lack of personal allegations against these defendants, the Court declines to dismiss the claims in the complaint on such grounds.

prosecutorial immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function, including conspiracies to present false evidence). Accordingly, plaintiff cannot maintain a claim against him for a failure to prosecute. Because the complaint is devoid of any other allegations against District Attorney Spota, the complaint against him is dismissed in its entirety.

Similarly, the claims must be dismissed against District Attorney Rice. Again, the complaint appears to allege a claim of failure to prosecute against District Attorney Rice, the only arguable allegations against her being:

> Defendants refused to prosecute or report criminal behavior.
>
> * * *
>
> When said politically connected crony told my husband to kill me, two judges, under the authority of Judge Lippman, encouraged the act. Nassau and Suffolk County District Attorneys looked the other way.

(Compl. ¶¶ 21, 23.) For the same reasons discussed *supra* with respect to District Attorney Spota, District Attorney Rice is entitled to absolute immunity for her decisions whether or not to prosecute. *See Fields*, 920 F.2d at 1119 (holding that because the District Attorney's failure to take action to prosecute official misconduct was, "in reality, a decision not to prosecute," he was absolutely immune from suit).[9]

---

[9] As stated *supra* with respect to the New York City Defendants, it may be that the *Rooker-Feldman* doctrine also precludes suit against the

### D. Leave to Amend

"Where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shelton v. Trs. of Columbia Univ.*, No. 06-CV-0664, 2007 U.S. App. LEXIS 12184, at *3 (2d Cir. May 23, 2007) (summary order) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). As stated *supra*, District Attorneys Rice and Spota are entitled to prosecutorial immunity for their decisions not to prosecute and, thus, plaintiff is denied leave to amend her claims of failure to prosecute against these defendants. Furthermore, because the State of New York, and the individual State defendants, in their official capacities, are entitled to Eleventh Amendment immunity and dismissal under the *Rooker-Feldman* doctrine, plaintiff is denied leave to amend her claims against the State of New York, its agencies, and individual State Defendants in their official capacity. Though it is difficult for the Court to discern from the current complaint the basis for the remainder of plaintiff's allegations and the personal involvement of the remaining individuals (and, as noted *supra*, *Rooker-Feldman* may apply to them as well once such allegations are supplied), in an abundance of caution, the Court grants plaintiff one opportunity to amend her complaint as to the remaining individual defendants. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the

---

County defendants. However, for the same reasons stated with respect to the City Defendants, the court declines to dismiss the complaint on such grounds at this time.

court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (quotation omitted); *Rhodes v. Hoy*, No. 05 Civ. 0836 (FJS), 2007 WL 1343649, at *3 (N.D.N.Y. May 5, 2007) ("[C]ourts should not dismiss *a pro se* litigant's complaint without granting leave to amend when there is 'any indication that a valid claim might be stated.' If, however, the court rules out any possibility that the amended complaint will state a claim, the court should not grant the plaintiff leave to amend his complaint.") (quoting *Gomez*, 171 F.3d at 795-96) (internal quotation marks and citation omitted). Plaintiff shall file the amended complaint within thirty days of the date of this Memorandum and Order. Failure to do so will result in dismissal of the complaint with prejudice. Plaintiff's complaint must allege the personal involvement or specific misconduct of each individual defendant. The amended complaint must be captioned as an "Amended Complaint" and must bear the same docket number as this Memorandum and Order.

### III. CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed. Plaintiff is granted thirty days from the date of this Memorandum and Order to file an Amended Complaint in accord with this Court's directions.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 28, 2007
Central Islip, New York

\* \* \*

Plaintiff appeared *pro se*. The attorney for the State Defendants is Ralph Pernick, Assistant Attorney General, 200 Old Country Road, Suite 460, Mineola, New York 11501. The attorney for the New York City Defendants is Michael A. Cardozo, Corporation Counsel of the City of New York, by John P. Hewson, 100 Church Street, New York, New York 10007. The attorney for the County Defendants is Christine Malafi, Suffolk County Attorney, by Susan A. Flynn, Assistant County Attorney, 100 Veterans Memorial Highway, Hauppauge, New York, 11788. The attorney for defendant Kathleen Rice is Lorna B. Goodman, Nassau County Attorney, by Andrew R. Scott, Deputy County Attorney, 1 West Street, Mineola, New York 11501.